240 A.2d 397.

THE EMPLOYERS' FIRE INSURANCE COMPANY *vs.*

CHESTER K. BEALS *et al.*

APRIL 3, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. The Employers' Fire Insurance Company, the insurer, issued a homeowners policy to Alfred and Clara Marzocchi, husband and wife. The Marzocchis together with their minor son, John, reside in Cumberland. The in-

surer concedes that John is an insured as that term is defined in its policy. The insurer filed a complaint in the superior court seeking a declaratory judgment that it was not required to defend or indemnify John Marzocchi for certain injuries he allegedly caused one of his schoolmates. The case is before us on the insurer's appeal from an order of the superior court dismissing its complaint on the ground that it failed to state a claim upon which relief could be granted.

The incident which gave rise to this action occurred in Providence on May 24, 1965, at St. Dunstan's Day School. On that day, John Marzocchi and one Chester K. Beals, Jr., both of whom were third-grade pupils, were in attendance at their class. The usual classroom routine was suddenly interrupted when John, for some reason not evident in this record, struck Chester in the right eye with a lead pencil. As a result of this tragic circumstance, Chester suffered grave injury and is reported to be permanently deprived of vision in his stricken eye.

The policy in which John is an insured defines under Insuring Agreements the insurer's obligation as follows:

"(a) Liability: To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the Company shall defend any suit against the Insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent * * *."

The policy, however, contains under Special Exclusions a clause which provides that no coverage is afforded if the "* * * bodily injury or property damage [was] caused intentionally by or at the direction of the Insured * * *."

The insurer in the instant action has joined as defendants John, Chester and Chester's parents. In its complaint, the insurer alleges that John "intentionally struck" Chester

with a pencil and therefore, by operation of its exclusionary clause referred to above, it disclaims any obligation to defend John or indemnify him against any damages which he might be obligated to pay as a consequence of the injury he inflicted on Chester.

The superior court appointed a guardian ad litem for each of the minor defendants. John's guardian denies that his ward intentionally injured his schoolmate.

Some two and one-half months after the filing of the insurer's complaint, Chester and his parents on March 27, 1967 commenced a civil action against John, his parents, St. Dunstan's Day School and the third-grade teacher. The complaint consists of six counts. In each count, Chester seeks to recover $250,000 for his injuries while his parents seek the sum of $50,000 for their consequential damages. That part of the complaint relative to the present action contains an allegation which declares that John Marzocchi "negligently and carelessly, or willfully or maliciously" caused the pencil to strike Chester.

In dismissing the insurer's complaint, the trial justice observed that the uniform declaratory judgments act (G. L. 1956, chap. 30 of title 9) was not designed to compel an injured person, himself not being a party to the insurance contract, to litigate issues in a declaratory judgment action which would otherwise be tried in the pending tort suit. In short, to use the words of the trial justice, the declaratory judgment should not be used to force the parties to have "a dress rehearsal" of an important issue expected to be tried in the injury suit. We concur in this statement.

In its appeal, the insurance company urges us to reverse the trial justice's denial of its request for a declaratory judgment. What prompts insurer's request therefor is its desire to have its obligations under the insurance contract to defendants in this case clearly defined by the court.

The insurer maintains that the facts in the present con-

troversy present it with a perplexing dilemma which can only be resolved by a declaratory judgment. It seeks to have decided by a declaratory proceeding whether or not the injury complained of by Chester was intentionally inflicted by John or was in the alternative the result of an accident. If this issue were decided, insurer's obligation to defend and indemnify would be clearly settled and all the parties would presumably act in accordance with its determination. The insurer further asserts that a failure to have this issue resolved before the trial on the injury causes a sharp conflict of interest to arise between itself and the insured. This conflict can be concisely described as follows: the prime interests of the insurer would best be served by an adjudication that the injury to Chester was caused intentionally, for in such an event insurer owes no duty to defend or indemnify insureds; contrariwise, the prime interests of the insured would best be served by either an adjudication that the injury to Chester was the result of a pure accident—for in such an event the insurer clearly owes a duty to defend—or alternatively was the result of the negligent conduct of defendant, in which case insurer would be obliged to defend and indemnify insured up to the extent of its policy limits. Moreover, if the insurer attempts to exculpate itself from obligations under the policy by a showing that the injury to Chester was intentionally caused, it would expose the insured to greater personal liability and a possible award of punitive damages. See *Harbin* v. *Assurance Co. of America,* 308 F.2d 748 (10th Cir. 1962). This polarization of interest, argues the insurer, makes it imperative that the above issue be disposed of before the principal tort suit, otherwise attorneys designated to represent the insured by the insurer would be asked to represent simultaneously two different parties with irreconcilable interests.

The narrow issue raised by this appeal is whether or not the trial justice in denying insurer's request for a declara-

tory judgment so abused his discretion as to warrant a reversal of his actions. For the reasons which follow, we think he acted with propriety and accordingly uphold his decision.

Initially we wish to point out that although the trial justice dismissed the complaint below under rule 12 (b) (6) of the rules of civil procedure of the superior court, to wit, failure of the complaint to set forth a claim upon which relief could be granted, the test as to the correctness of this ruling is not that which we laid out in *Bragg* v. *Warwick Shoppers World, Inc.*, 102 R. I. 8, 227 A.2d 582, and more recently in *Buszta* v. *Souther*, 102 R. I. 609, 232 A.2d 396. Our declaratory judgments act is concerned with a remedy, the granting of which is purely discretionary. This discretionary power remains intact despite the technical sufficiency of the complaint to withstand a 12 (b) (6) motion or its apparent efficacy to invoke the court's jurisdiction. *cf. Empire Fire & Marine Ins. Co.* v. *Goodman*, 147 Mont. 396, 412 P.2d 569. Thus, even if the complaint contains a set of facts which bring it within the scope of our declaratory judgments act, there is no duty imposed thereby on the court to grant such relief, but rather the court is free to decide in the exercise of its discretion whether or not to award the relief asked for. We point out, however, that this discretion is not absolute and its exercise is subject to appropriate appellate review. See G. L. 1956, §9-30-7.

The utility of a declaratory judgment action in liability insurance cases cannot be denied, for it is a remedy readily adaptable to controversies in which there is a hassle over the coverage offered by a policy as applied to a crystallized set of facts. 20 Appleman, *Insurance Law and Practice*, §11332 at 109. Oftentimes it is the most expeditious and fairest method by which an insurer can secure an advance determination as to its contractual duty to defend or indemnify one of its policyholders. 6A Moore, *Federal Practice* (2d ed.), ¶57:19, p. 3111. Use of a declaratory action

can be effectively summoned to resolve a wide variety of legal and factual issues which are peculiarly common to insurance cases; for example, it can be employed to dispose of issues relating to policy liability limits, waiver of rights, forfeiture of rights for alleged nonpayment of premiums and ownership, assignment or beneficiary rights. 3 Barron & Holtzoff, *Federal Practice and Procedure*, §1264, pp. 282-86. Thus when uncertainty exists as to the precise obligations and rights flowing between an insurer and an insured by reason of a contract of insurance, a declaratory action could well provide the much needed source of enlightenment and clarification in order that both parties can proceed to litigate issues fully aware of the responsibilities and duties, if any, each may owe to the other.

Although there may be a recognized need for a declaration of rights emanating from an insurance contract, it is nonetheless proper for a court in the exercise of its discretion to refuse to grant a declaratory judgment under certain circumstances. Certainly before such a judgment is awarded, the court must carefully examine and weigh all relevant factors which bear on the propriety of granting this type of relief in order to be assured that no rights of any interested party will be abused in the process. Among the factors considered by courts in this regard are the inconvenience and burden to respective litigants and the inequitable conduct on the part of the individual seeking the relief. 3 Barron & Holtzoff, *supra*, §1265 at 299. Courts have, for example, not infrequently admonished insurance attorneys against the unfair use of declaratory judgments as a procedural fencing technique to influence unduly the choice of a forum, to wrest control of litigation from injured parties, or to cause a confusing alteration of the burden of proof or the burden of going forward with evidence. 6A Moore, *supra*, at 3113; Note, Availability Of A Declaratory Judgment When Another Suit Is Pending, 51 *Yale L. J.*

511, 515. If it appears that a declaratory judgment would work such resultant injustice upon any interested party, courts have uniformly rebuffed its attempted invocation.

In addition, it is most important for courts in considering whether or not to award a declaratory judgment to examine the issues sought to be resolved by the insurer. If the troublesome issue giving rise to insurer's dilemma is one which is separable from the issues awaiting to be litigated in the principal tort suit, a declaratory judgment should be liberally awarded. Advance determination of such issues is of great assistance to all the parties; and an early resolution of questions of this type, generally speaking, does not adversely affect the interest of the injured party. Thus, declaratory judgment proceedings are ideally suited for preliminary disposition of such issues as whether or not lack of timely notice or failure to cooperate on the part of the insured absolves the insurer of its obligation to defend or indemnify.

On the other hand, if the vexatious issue giving rise to the conflict of interests between the insured and the insurer is inextricably related to those issues which will ultimately determine the insured's liability to the injured party in the tort suit, courts normally and justifiably deny the application for a declaratory judgment. *Nationwide Mut. Ins. Co.* v. *Dennis,* 14 App.Div.2d 188, 217 N.Y.S.2d 680. To award a declaratory judgment in such an event would doubtlessly clear up the insurer's obligation to the insured under their insurance contract, but, in our opinion, it would do so at the harsh expense of the injured party. We are of the belief that to allow insurance companies to litigate issues which are identical with ones to be tried later during the injury suit would be tantamount to permitting insurance companies to assume unfairly the control and command of the tort litigation. See 6A Moore, *supra,* at 3113, and cases cited therein; see also Note, Use Of The Declara-

tory Judgment To Determine A Liability Insurer's Duty To Defend—Conflict Of Interests, 41 *Ind. L. J.* 87, 101. To do otherwise would surely jeopardize the injured party's right to direct, control and manage the course of his injury suit.

The insurer in this case plainly seeks to have adjudicated in its declaratory action the causation of the injury to the Beals youth; this same issue is a vital one to be resolved in the ensuing damage action brought by Beals against its insured, John Marzocchi; accordingly, notwithstanding the penumbra of uncertainty which obscures the insurer's duty under its policy to the insured, the trial justice, in our opinion, acted with due propriety in declining to award a declaratory judgment in the instant matter. See *Ohio Casualty Ins. Co.* v. *Flanagin,* 44 N. J. 504, 210 A.2d 221.

Having concluded that the trial justice correctly dismissed the insurer's complaint, we deem it appropriate at this point to direct a comment relative to the duty owed by an insurer to the insured when performance of such a duty raises a serious conflict of interests question for an attorney designated to represent both the insurer and the insured at the trial of the injury suit.

In Rhode Island, the insurer's duty to defend a suit brought against one of its policyholders is determined by the allegations contained in the complaint. *Thomas* v. *American Universal Ins. Co.,* 80 R. I. 129, 93 A.2d 309. As a general rule, where the particular policy requires insurer to defend even if the suit is groundless, false or fraudulent, the insurer's duty to defend is ascertained by laying the tort complaint alongside the policy; if the allegations in the complaint fall within the risk insured against in the policy, the insurer is said to be duty-bound to provide a defense for the insured, regardless of the actual details of the injury or the ultimate grounds on which the insured's liability to the injured party may be predicated. 7A Appleman, *Insurance Law and Practice,* §4683, p. 436.

There is some conflict of authority as to whether the pleading test referred to above is determinative of the insurer's duty to defend when the allegations in the complaint are at odds with the actual facts known or ascertained by the insurer. See 2 A.L.R.3d 1238, §8 at 1251, and cases cited therein. In our opinion the best rule in such a case is that if the pleadings recite facts bringing the injury complained of within the coverage of the insurance policy, the insurer must defend irrespective of the insured's ultimate liability to the plaintiff. 7A Appleman, *supra,* and cases cited therein. In this state, therefore, a liability insurer's duty to defend is predicated not upon information in its possession which indicates or even proves non-coverage, but instead upon the allegations in the complaint filed against the insured; in other words, when a complaint contains a statement of facts which bring the case within or potentially within the risk coverage of the policy, the insurer has an unequivocal duty to defend. *McFadyen* v. *North River Ins. Co.,* 62 Ill.App.2d 164, 209 N.E.2d 833; *Heyden Newport Chemical Corp.* v. *Southern General Ins. Co.,* Tex., 387 S.W.2d 22. See also cases cited in Anno. at 50 A.L.R.2d 458, §22 at 504. Furthermore, any doubts as to the adequacy of the pleadings to encompass an occurrence within the coverage of the policy are resolved against the insurer and in favor of its insured. *Eichler Homes, Inc.* v. *Underwriters at Lloyds, London,* 47 Cal. Rpt'r 843, 238 Cal. App.2d 532.

In view of these principles, the insurer has a duty to defend its insured, John Marzocchi, in the action filed by the respective members of the Beals family. An examination of their complaint settles this point beyond question since they, in utilizing the new plasticized form of pleadings available to a plaintiff under the new rules of civil procedure of the superior court, have alleged in their complaint alternative grounds for recovery, one of which sounds in

negligence and is unquestionably within the risks covered by the policy.

In establishing the insurer's duty to defend, we wish to point out that we concur in the generally recognized rule that the duty to defend is broader in its scope than the duty of an insurer to indemnify, and its existence does not depend on whether the injured party will ultimately prevail against the insured. *Missionaries of Co. of Mary, Inc. v. Aetna Cas. & Surety Co.*, Conn., 230 A.2d 21.

While the insurer makes much of the alleged conflict of interests, it overlooks the fact that if John's guardian appreciates the conflict of interests which arises for attorneys who are asked by the insurance company to provide a defense for John in this action and nonetheless expresses willingness to accept the services of the insurance attorneys in his defense, the significance of the conflict of interests issue dissolves. An examination of Canon 6 of the professional ethics of the Rhode Island Bar Association discloses that an attorney may represent conflicting interests after a full disclosure of the pertinent facts has been made to the parties involved and they have expressly consented to his retention as counsel. In the instant case, if the insurance company can acquire the assent of John's guardian, it will resolve all doubts as to the propriety of a defense undertaken on John's behalf by the insurer's attorney.

If, however, an insured, after having been apprised of the conflicting interests existing between him and his insurer, declines to be represented by the insurer's attorney, we have a different situation. Concerned as we are that the public's trust in the judicial processes be maintained, this court cannot stand idly by in such circumstances. We are as conscious of an insurer's concern that it control the defense of any action brought against one of its insureds as we are of an insured's expectations that his rights will be properly protected. In our opinion, however, an insured,

when faced with the quandary posited by the facts of the instant case, has a legitimate right to refuse to accept the offer of a defense counsel appointed by the insurance company; and when an insured elects to exercise this prerogative, the insurer's desire to control the defense must yield to its obligation to defend its policyholder.

There is, therefore, a discernible need to discover a solution to this dilemma which will, at the same time, be mutually protective and satisfactory to the parties. Our search of the case law and scholarly works dealing with this particular problem plainly indicates to us that no unanimity exists as to any single answer. See Keeton, Ancillary Rights Of The Insured Against His Liability Insurer, 28 *Ins. Counsel J.* 395; Appleman, Conflicts In Injury Defenses, 1957 *Ins. L. J.* 545; Keeton, Liability Insurance And Responsibility For Settlement, 67 *Harv. L. Rev.* 1136; Note, Use Of The Declaratory Judgment To Determine A Liability Insurer's Duty To Defend—Conflict Of Interests, 41 *Ind. L. J.* 87; The Insurer's Duty To Defend Under A Liability Insurance Policy, 114 *U. Pa. L. Rev.* 734; Insurance—Duty To Defend—Conflict Of Interests, 3 *Natural Resources Journal* 185; Cahoon, Company's Duty To Defend—Recent Developments, 458 *Ins. L. J.* 151; Balkcom, Insurance—Insurer's Duty To Defend, 25 *Ga. B. J.* 300.

One novel solution to the problem posed, has been proposed by the New York Court of Appeals. In *Prashker* v. *United States Guarantee Co.*, 1 N.Y.2d 584, 136 N.E.2d 871, it was suggested that where a conflict of interests has arisen between an insurer and its insured, the attorney to defend the insured in the tort suit should be selected by the insured and the reasonable value of the professional services rendered should be assumed by the insurer. While this suggestion seemingly would afford full protection to the insured's interests, we note that insurers may well be re-

luctant to endorse it since they feel that their right to rely on a policy's exclusionary clause may be jeopardized.

Another possible solution to the problem under consideration would be to have the insured and the insurer represented by two different attorneys, each of whom is pledged to promote and protect the prime interests of the client he represents. In this way it appears that the deleterious conflict of interests imposed on an attorney who attempts the difficult task of representing both parties is also averted.

Because the insurer has a legitimate interest in seeing that any recovery based on finding of negligence on the part of its insured is kept within reasonable bounds, and since the total expense of this defense is to be assumed by the insurer under its promise to defend, we believe that in each of the above two suggestions the engagement of an independent counsel to represent the insured should be approved by the insurer. Such approval, however, should not be unreasonably withheld.

While an insurer may be dismayed in its having to pay the cost of two attorneys for one civil suit, we are cognizant that the necessity for this action stems from its failure to provide within any degree of clarity for this contingency when it placed the exclusionary clause in its insured's contract. The insurer, being the draftsman, should have set forth its provisions in such clear and distinct language as would have avoided any doubt relative to the extent of its duty to defend. Under a well-established principle, the words of an insurance contract are construed against the insurer. 4 Williston, *Contracts* (3d ed. Jaeger), §621, pp. 764-65. Accordingly, the insurance company is bound by the terms of its own contract.

We wish to make it plainly understood that the above two suggested procedures for avoiding the conflict of interests in cases similar to the one now before us, are not to be taken as the only avenues by which an attorney can act

with due propriety in these cases. The decision as to which of these alternatives or as to any others which may be proposed in the future is of course to be made conjunctively by the insured, the insurer and the attorneys involved.

The plaintiff's appeal is denied and dismissed, the order appealed from is affirmed, and the case is remitted to the superior court for further proceedings.

*Jordan, Hanson & Curran, A. Lauriston Parks,* of counsel, for plaintiff.

*Almonte, Lisa & Pisano, Peter A. Almonte, Carl B. Lisa,* of counsel (for defendants Chester K. Beals, Francis A. Beals and Chester K. Beals, Jr.).

*Hugo G. Caroselli, Dominique S. Pavao,* of counsel (for defendants John Marzocchi, Alfred Marzocchi and Clara Marzocchi).