AETNA CASUALTY & SURETY COMPANY

v.

**Michael E. KELLY, Stephen Kelly, Matthew T. Kelly, John Jones, AGL John Doe No. 1, John Doe No. 2, Cynthia Lewis, David R. Wood Roman Catholic Bishop of Providence, a Corporation Sole, the Most Reverend Louis E. Gelineau, the Most Reverend Raymond A. Beaulieu, the Diocese of Providence, Inc., Kenneth Angell, Jerome Fioretti, Reverend Roger Marot, Reverend Edward Cardente, Catholic Youth Organization of the Diocese of Providence, Inc., Robert Marcantonio, William O'Connell, Edmund Mackerel, Richard Meglio, Alfred R. Desrosiers, James M. Silva.**

Civ. A. No. 94–0285–T.

United States District Court, D. Rhode Island.

June 29, 1995.

As Corrected: July 5, 1995.

---

Ronald P. Langlois, Providence, RI, John P. Graceffa, Gallagher & Gallagher, P.C., Boston, MA, and Laura M. Gregory, Boston, MA, for Aetna Cas. & Sur. Co., plaintiff.

Paul P. Baillargeon, North Smithfield, RI, for David R. Wood, Roman Catholic Bishop of Providence, a Corp. Sole, defendant.

Paul V. Reynolds, Boyer, Reynolds & De-Marco, Ltd., Providence, RI and William T. Murphy, Providence, RI, for Louis E. Gelineau, Most Reverend, Raymond A. Beaulieu, Most Reverend, Diocese of Providence, Inc., Kenneth Angell, Jerome Fioretti, Roger Marot, Reverend, Edward Cardente, Reverend, and Catholic Youth Organization of Diocese of Providence, Inc., defendants.

Gerald C. DeMaria, Higgins, Cavanagh & Cooney, Providence, RI, for Robert Marcantonio, defendant.

James T. McCormick, McKenna & McCormick, Providence, RI, for William C. O'Connell and Edmund Micarelli, defendants and for James M. Silva, defendant.

Marc DeSisto, DeSisto Law Offices, Providence, RI, for Richard Meglio and Alfred R. Desrosiers, defendants.

Susan E. McGuirl, Richard C. Bicki, Cerilli, McGuirl & Bicki, Providence, RI, and Lise M. Iwon, Laurence and Iwon, Wakefield, RI, for Michael E. Kelly, Stephen B. Kelly, and Matthew T. Kelly, defendants.

Richard Daniel Prentiss, R. Daniel Prentiss and Assoc., P.C., Providence, RI, for John Jones, AGL and for John Doe #2, defendant.

Richard Daniel Prentiss, R. Daniel Prentiss and Assoc., P.C., Providence, RI and Mitchell S. Riffkin, Warwick, RI, for John Doe #1, defendant.

Arlene Marie Violet, Arlene Violet & Law Assoc., East Providence, RI, for Cynthia Lewis, defendant.

## MEMORANDUM AND ORDER

TORRES, District Judge.

This is an action for a declaratory judgment brought pursuant to 28 U.S.C. § 2201. It is presently before the Court for consideration of a motion for a stay. The issue presented is whether a declaratory judgment action regarding liability insurance coverage should be stayed until state and federal court tort litigation from which it arises is resolved. For reasons stated below, the motion to stay is granted in part and denied in part.

### Background

This case arises from nine separate tort actions (the "underlying litigation") brought by persons who claim that they were sexually assaulted by priests of the Roman Catholic Diocese of Providence (the Diocese) between 1972 and 1975. Three of those actions are pending in this Court and the others are pending in the Rhode Island Superior Court.

The defendants in the underlying litigation (the "tort defendants") are the individual priests accused of perpetrating the assaults (the "priests"), the Bishop, the Diocese and various diocesan officials (collectively referred to as the "diocesan defendants"). The claims against the diocesan defendants are based on the doctrine of *respondeat superior* as well as on allegations that they were negligent in hiring and/or supervising the priests and that they failed to take appropriate preventive action after learning of the priests' propensities. The tort defendants claim to be insured under one or more policies of liability insurance issued by Aetna Casualty & Surety Company, Inc. (Aetna) to the Bishop and the Diocese.

Aetna brought this action against all of the parties to the underlying litigation and seeks a declaration that it has no obligation to defend or indemnify any of the tort defendants. The complaint pointedly refrains from acknowledging that any policies were issued to the tort defendants but recites a litany of reasons why no coverage would be afforded *if* such policies exist. Those reasons run the gamut from averments that the tort defendants have violated various policy provisions (e.g., that they failed to provide

timely notice of the incidents giving rise to the tort claims) to assertions that no coverage is provided for the intentional conduct alleged or for the punitive damages being claimed by the tort plaintiffs.

The diocesan defendants have moved to stay this action on the ground that resolution of the coverage questions would require determination of factual issues presented in the underlying litigation, thereby resulting in piecemeal litigation and unjustifiable duplication of effort. Aetna disputes that contention and, at the Court's direction, has submitted a proposed plan for limiting discovery to those issues that Aetna asserts are not raised in the underlying litigation.

## Discussion

### I. The General Principles

The general rule is that federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). Therefore, ordinarily, a federal court may neither dismiss nor stay an action merely because a similar action is pending in state court. *Id.; Gonzalez v. Cruz*, 926 F.2d 1, 3 (1st Cir. 1991). *See also, Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 28, 103 S.Ct. 927, 943, 74 L.Ed.2d 765 (1983). ("[A] stay is as much a refusal to exercise federal jurisdiction as a dismissal.").

However, a federal court may refrain from acting in "exceptional circumstances" where deferring to the state court litigation would "clearly serve an important countervailing interest." *Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244 (*quoting County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)). For example, the doctrine of abstention permits a federal court to decline to exercise its jurisdiction when resolution by state courts would be more consonant with principles of federalism and comity or would avoid the need to decide federal constitutional issues. *Moses H. Cone*, 460 U.S. at 14–15, 103 S.Ct. at 936–37; *Colorado River*, 424 U.S. at 814–16, 96 S.Ct. at 1244–46 (summarizing types of abstention).

Even when the doctrine of abstention does not apply, a stay may be appropriate if proceeding with the federal suit would be inconsistent with "[wise] judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). However, because "wise judicial administration" is not as weighty a countervailing factor as principles of federalism or proper constitutional adjudication, this exception to the "unflagging obligation" to exercise jurisdiction is narrower than the abstention exception. *Id.* at 818, 96 S.Ct. at 1246–47. Consequently, a refusal to act for reasons of wise judicial administration generally requires "the clearest of justifications." *Colorado River*, 424 U.S. at 819, 96 S.Ct. at 1247.

There is no "hard and fast rule" for determining what constitutes "exceptional circumstances" justifying a stay on grounds of wise judicial administration. *Moses H. Cone*, 460 U.S. at 15, 103 S.Ct. at 936–37. Under *Colorado River*, that determination requires consideration of a variety of factors that include:

1. Which court first assum[ed] jurisdiction over any property that may be the subject of the litigation;

2. The inconvenience of the federal forum;

3. The desirability of avoiding piecemeal litigation;

4. The order in which jurisdiction was obtained by the concurrent forums; and

5. Whether federal or state law "provides the rule of decision on the merits."

*Moses H. Cone*, 460 U.S. at 15, 23, 103 S.Ct. at 936–37, 941 (quoting *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. at 1246–47).

The comparative weight assigned to each factor depends on the circumstances of each case. *Id.* at 15–16, 103 S.Ct. at 936–37. Accordingly, a district court is obliged to make "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise." *Colo-*

*rado River,* 424 U.S. at 818–19, 96 S.Ct. at 1247.

At one time there was a split of authority regarding whether the principles set forth in *Colorado River* apply to declaratory judgment actions. The disagreement derived from the fact that, under the Federal Declaratory Judgment Act, a district court "may" award declaratory relief but is "under no compulsion to exercise [its] jurisdiction." 28 U.S.C. § 2201(a); *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942); *Cardinal Chemical Co. v. Morton International, Inc.,* —— U.S. ——, n. 17, 113 S.Ct. 1967, n. 17, 124 L.Ed.2d 1 (1993) (Declaratory Judgment Act affords district court some discretion whether to exercise jurisdiction); *El Dia, Inc. v. Hernandez Colon,* 963 F.2d 488, 493 (1st Cir.1992).

Some courts attached little or no significance to the permissive language in the Declaratory Judgment Act and applied the "exceptional circumstances" test of *Colorado River* to declaratory judgment actions in the same way that they were applied to other kinds of cases. *See Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc.,* 887 F.2d 1213, 1221 (3rd Cir.1989) (citing cases). Other courts reasoned that, because of the statute's permissive language, declaratory judgment cases do not create the same unflagging obligation to exercise jurisdiction that exists in other kinds of cases. Accordingly, they held that the pertinent inquiry is not whether "exceptional circumstances" exist; but, rather, whether declining to proceed with a declaratory judgment case would be an abuse of discretion. See, *e.g. Terra Nova Ins. Co.,* 887 F.2d at 1222–24. The Court of Appeals for the First Circuit took an intermediate position. It applied the *Colorado River* test to declaratory judgment actions but attached "great weight" to the "desirability of avoiding piecemeal litigation" factor. *Fuller Co. v. Ramon I. Gil, Inc.,* 782 F.2d 306, 309 (1st Cir.1986); *National R.R. Passenger Corp. v. Providence and Worcester R.R. Co.,* 798 F.2d 8, 11 (1st Cir.1986) (citing *Fuller*).

The Supreme Court recently settled the disagreement by holding that district courts have discretion to determine whether declaratory judgment actions should be stayed and need not apply the "exceptional circumstances" test referred to in *Colorado River. Wilton v. Seven Falls Co.,* —— U.S. ——, 115 S.Ct. 2137, —— L.Ed.2d —— (1995). More specifically, the Court stated:

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. n2 In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Id.,* at ——, 115 S.Ct. at 2143.

The discretion to decline to proceed with a declaratory judgment action is not "unbridled." *Public Affairs Assoc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 581–82, 7 L.Ed.2d 604 (1962); *Fuller Co. v. Ramon I. Gil, Inc.,* 782 F.2d at 309 (quoting *Rickover* ). Although the Supreme Court has refrained from prescribing any "exclusive list" of factors governing the exercise of that discretion, it has indicated that when a parallel state action is pending, one important consideration is " 'whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding.' " *Wilton,* —— U.S. at ——, 115 S.Ct. at 2141 (quoting *Brillhart,* 316 U.S. at 495, 62 S.Ct. at 1176). In addition, the Court has recognized that "ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart,* 316 U.S. at 495, 62 S.Ct. at 1175–76; *Fuller,* 782 F.2d at 310 (quoting *Brillhart* ).

When all parties have a fair opportunity to litigate their claims in the state court action, the initial inquiry in determining whether the federal declaratory judgment action should

be stayed is whether answering the declaratory judgment questions requires resolution of factual issues presented in the state court case. If there are no common factual issues, it is less likely that considerations of "practicality and wise judicial administration" would warrant a stay. On the other hand, if the declaratory judgment action presents the same factual issues that are the subject of the state court case, a stay may be appropriate. This principle is equally applicable to declaratory judgment actions involving insurance coverage. When the coverage questions turn on factual issues raised in the underlying tort litigation, a stay, generally, should be granted in order to avoid duplicative proceedings, to preserve the insured's prerogative to select the forum and to avoid the risk of inconsistent judgments. *Metropolitan Property and Liability Ins. Co. v. Kirkwood,* 729 F.2d 61, 62–63 (1st Cir.1984).

Another factor that must be considered in insurance coverage cases is whether the insurer is confronted with a conflict of interest that would affect its defense of the insured in the underlying tort suit. *Id.* at 63. The conflict issue frequently arises when the insured faces potential liability for conduct covered by the policy and, also, for conduct not covered by the policy. In such cases, the insurer's interest in attributing any liability to uncovered conduct diverges from the insured's interest in attributing any liability to covered conduct.

The prospect that such conflicts may be eliminated is a weighty reason for proceeding with a declaratory judgment action. However, it is not necessarily determinative. An assessment must be made regarding the likelihood that a declaratory judgment, in fact, will eliminate the conflict. In addition, that likelihood must be balanced against countervailing factors such as the strong interest in avoiding piecemeal litigation and the possibility that the declaratory judgment action will create other conflicts. Finally, the appropriateness of proceeding with a declaratory judgment action must be evaluated in light of alternative methods for dealing with any conflicts confronting the insurer. See, *Employers' Fire Ins. Co. v. Beals,* 103 R.I. 623, 634, 240 A.2d 397 (1968) (suggesting that, in cases

where both covered and uncovered conduct is alleged, the insurer may either permit the insured to select counsel to defend the underlying litigation or retain additional counsel to represent the insured with respect to any divergent interests).

## II. *Application of the Principles*

In this case, the claims of all parties in interest can be adjudicated satisfactorily in the underlying litigation. The tort plaintiffs and tort defendants are direct participants in those cases. In addition, Aetna, as the tort defendants' insurer, is an indirect participant in the underlying litigation and has the option of raising any coverage questions in state court pursuant to the Rhode Island Declaratory Judgment Act. R.I.Gen.Laws § 9–30–1. Indeed, state court would be a particularly appropriate forum in which to address those questions because the questions are governed by state law.

It is not so easy to determine the extent to which the declaratory judgment action requires the resolution of common factual questions or the likelihood that it will alleviate potential conflicts of interest. Those assessments must be made in the context of the individual claims made by Aetna.

## A. *The Duty to Defend*

Aetna cites what boils down to two grounds for disclaiming any duty to defend. First, it contends that the underlying tort claims are based on conduct not covered by the policy. In addition, it alleges that the Diocese violated policy requirements both by omitting from its application for insurance material information regarding the propensities of the priests and by failing to provide timely notice of the incidents of sexual abuse.

There is no reason to stay a determination as to whether the nature of defendants' alleged conduct negates Aetna's duty to *defend* because that determination does not require resolution of any factual issues presented in the underlying litigation. Under Rhode Island law, an insurer's duty to defend is broader than its duty to *indemnify. Mellow v. Medical Malpractice Joint Underwriting Assn.,* 567 A.2d 367, 368 (R.I.1989);

*Beals,* 103 R.I. at 633, 240 A.2d 397. A duty to defend arises if the factual allegations contained in the *complaint* raise a reasonable possibility of coverage. *Mellow,* 567 A.2d at 368; *Hingham Mutual Fire Ins. Co. v. Heroux,* 549 A.2d 265, 266 (R.I.1988); *Flori v. Allstate Ins. Co.,* 120 R.I. 511, 513, 388 A.2d 25 (1978); *Beals,* 103 R.I. at 632, 240 A.2d 397. An insurer is not relieved of its duty to defend even though additional facts might be developed that would negate coverage. *Flori,* 120 R.I. at 513–14, 388 A.2d 25; *Beals,* 103 R.I. at 631–32, 240 A.2d 397. Nor is an insurer relieved of its duty to defend on the ground that the claim against the insured lacks merit. *Flori,* 120 R.I. at 513, 388 A.2d 25 (citing cases).

In short, determining whether an insurer has a duty to defend requires nothing more than comparing the allegations in the complaint with the terms of the policy. If the facts alleged in the complaint fall within the risks covered by the policy, the insurer is obligated to defend. Otherwise, it is not. *Flori,* 120 R.I. at 513, 388 A.2d 25. Indeed, in this case, Aetna's own policy expressly provides that Aetna is obliged to provide a defense "even if any of the allegations of the suit [against the insured] are groundless, false or fraudulent."

■ Aetna's second reason for disclaiming any duty to defend presents a more difficult question. In order to prevail on the ground that the diocesan defendants failed to disclose or report the alleged sexual abuse, Aetna would have to establish, among other things, that the abuse occurred and that the diocesan defendants were aware of it at the time. Those allegations are central to adjudication of the diocesan defendants' liability in the underlying litigation. Therefore, addressing them in this case would result in duplication of effort and create a risk of inconsistent results. In short, such a course would be the antithesis of wise judicial administration.

Moreover, there are no conflict of interest considerations that are sufficiently compelling to outweigh the undesirable consequences of such piecemeal litigation. Aetna and the diocesan defendants have a mutual interest in disputing the allegations that sexual abuse occurred, and that the diocesan defendants were aware or should have been aware of it because, unless those allegations are proven, it is doubtful that tort liability can be imposed upon the diocesan defendants. Therefore, in defending the underlying litigation, Aetna would have little reason to take a position on those issues that is contrary to that of the diocesan defendants. Aetna's incentive to take a contrary position is further diminished by the fact that establishing that the diocesan defendants were aware of the alleged abuse would not necessarily preclude coverage. In order to negate coverage for failure to report or disclose the alleged sexual abuse, Aetna also would have to prove that it was prejudiced by the insured's delay in providing notice of the alleged abuse or that any nondisclosure was material to its decision to issue the policy. *Textron, Inc. v. Liberty Mutual Ins. Co.,* 639 A.2d 1358, 1364 (R.I.1994); *Evora v. Henry,* 559 A.2d 1038, 1040 (R.I.1989) (dealing with fire insurance).

More importantly, litigating the abuse and knowledge issues in this case would create a far more immediate and serious conflict of interest than any potential conflict Aetna now faces. It would convert Aetna and the diocesan defendants from allies to adversaries with respect to issues that are critical to adjudication of the diocesan defendants' tort liability. In addition, if Aetna succeeds in demonstrating that abuse occurred and that the diocesan defendants knew it, those determinations are likely to be binding on the diocesan defendants in the underlying litigation under the doctrines of *res judicata* and/or collateral estoppel. *Rhode Island Student Loan Authority v. NELS,* 600 A.2d 717, 720 and n. 2 (R.I.1991); *DeCosta v. Viacom Int'l, Inc.,* 981 F.2d 602 (1st Cir. 1992) (federal rule of collateral estoppel); *Gonzalez v. Banco Central Corp.,* 27 F.3d 751 (1st Cir.1991) (federal rule of *res judicata* ). Accordingly, by proceeding with this declaratory judgment action, Aetna, in effect, would be seeking to prove the diocesan defendants liable in tort.

Those efforts would be inconsistent with Aetna's obligations as an insurer. The principal purpose of liability insurance is to pro-

tect policy holders from claims asserted by third parties based on matters covered by the policy. By taking action that makes a policy holder liable for such claims, an insurer would subvert the purpose of the policy and violate one of the most fundamental duties it owes to its insured.

In that respect, the situation presented in this case is materially different from the situation presented in the typical declaratory action brought by an insurer against its insured in order to resolve a coverage dispute. In the typical case, the insurer seeks to disclaim coverage on grounds that have nothing to do with the policy holder's liability to a third party claimant. Consequently, if the insurer prevails, the only adverse consequences to the policy holder are that the policy holder must pay for its defense and it will not be entitled to indemnification if there is a finding of liability. Here, in contrast, Aetna's grounds for disclaiming any duty to defend require it to prove facts that would establish the diocesan defendants' liability to the tort plaintiffs.

The inappropriateness of such a course of action is underscored by the fact that Aetna's anticipated conflict can be dealt with in other ways that are more consistent with its obligations to the diocesan defendants. For example, Aetna could keep all of its options open by hiring independent counsel to represent the diocesan defendants in the underlying litigation to the extent that their interests might diverge from Aetna's. *See Beals,* 103 R.I. at 635, 240 A.2d 397.

In summary, considerations of practicality and wise judicial administration counsel that a stay be denied with respect to Aetna's claim that it has no duty to defend based on the nature of the conduct alleged and that a stay be granted with respect to the claim that there is no duty to defend based on the diocesan defendants' supposed failure to inform Aetna about the alleged sexual abuse in a more timely manner.

### B. *The Duty to Indemnify*

Aetna argues that, even if it is obliged to defend the tort defendants, it should not be required to indemnify them. In support of that argument, Aetna makes a number of claims that may be summarized as follows:

1. Any obligation to indemnify has been reduced or eliminated by exhaustion of the policy limits.

2. The claims against the tort defendants are based on allegations of intentional acts of sexual abuse that are not covered by the policy.

3. The policy does not afford coverage for punitive damages.

■ There is no need to stay determination of the first claim. Although deciding whether Aetna's obligation to indemnify has been reduced or eliminated by exhaustion of the policy limits does present a number of factual questions, they are not questions that are raised in the underlying litigation. Rather, they deal with matters such as the limits of coverage, the copayment provisions of the policy and the amounts previously paid in satisfaction of claims against the insured, all of which are unrelated to adjudication of the insureds' tort liability.

■ In determining whether the two remaining claims should be stayed, separate consideration must be given to Aetna's duty to indemnify the diocesan defendants and its duty to indemnify the priests. With respect to the diocesan defendants the analysis is similar to that previously made in connection with Aetna's duty to defend. Aetna's claim that the diocesan defendants acted intentionally turns on whether they were aware of the alleged abuse. As already noted, that issue is central to the tort suits and addressing it in this case would result in piecemeal litigation and would exacerbate rather than alleviate the conflicts of interest between Aetna and the diocesan defendants. Furthermore, litigating the issue at this juncture will not resolve the indemnification question. Some of the tort claims against the diocesan defendants are based on allegations of negligence and, to the extent that liability is predicated on those claims, Aetna will not be relieved of any obligation to indemnify.

■ In contrast, the priests' entitlement to indemnification does not depend on resolution of any factual issues presented in the underlying litigation. If it is determined that

the priests did not engage in sexual abuse the question of indemnification will not arise. On the other hand, if it is found that the priests did commit such acts, it would be difficult to characterize their conduct as anything other than intentional and the sole issue bearing on Aetna's duty to indemnify them would be whether that kind of intentional conduct and the punitive damages that may flow from it are within the coverage of the policy. Since that appears to be a question of law, resolving it now would not interfere with wise judicial administration. Indeed, resolution of that question before the underlying litigation runs its course may promote wise judicial administration by assisting the parties in evaluating their respective positions for settlement purposes.

### Conclusion

For all of the foregoing reasons, it is hereby ORDERED as follows:

1. The motion for a stay is *denied* with respect to the claims that:

    a. Aetna has no duty to defend because the policy does not afford coverage for the conduct described in the complaints filed in the underlying litigation.

    b. Aetna has no obligation to indemnify the priests because their alleged conduct is outside the coverage of the policy.

    c. Aetna's obligation to indemnify has been reduced or eliminated by partial or total exhaustion of the policy limits.

2. Until further order of this Court, the motion to stay is *granted* with respect to all other claims.

IT IS SO ORDERED.