**EMPLOYERS MUTUAL CASUALTY COMPANY**

v.

**PIC CONTRACTORS, INC., Packings and Insulation Co., Inc., Emily Page as Executrix of Albert E. Page, Jr. and Emily N. Page, Individually, Lucy Rinaldo, Individually and as Executrix of the Estate of Joseph Rinaldo, Barbara Morrissette, Annette Santos as Executrix of the Estate of Richard Morrissette, William Witherell, Mary LaSalle, Individually and as Executrix of the Estate of William A. LaSalle, Roberta Heaney, Individually and as Executrix of the Estate of Joseph Heaney, Joseph Pelletier and Jeanne Pelletier, and Ruth Mahoney, Executrix of the Estate of Thomas Mahoney and as surviving spouse.**

No. 96–639–T.

United States District Court,
D. Rhode Island.

Oct. 28, 1998.

Kenneth B. Borden, Higgins, Cavanagh & Cooney, Providence, RI, for Plaintiff.

Robert M. Duffy, Duffy & Sweeney, Providence, RI, for Defendants.

### MEMORANDUM AND ORDER

TORRES, District Judge.

Pursuant to 28 U.S.C. § 2201, Employers Mutual Casualty Company ("Employers") seeks a declaratory judgment that it has no duty to defend or indemnify PIC Contractors, Inc., ("PIC") or its affiliated company, Packings and Insulation Co. ("Packings") (collectively "the companies") in state tort court suits against the companies (the "underlying suits") for personal injuries allegedly resulting from exposure to asbestos.

The companies have moved to dismiss; or, alternatively, to stay this action pending resolution of the underlying suits. Because I find that the complaints in the underlying suits establish a reasonable possibility of coverage, the claim for declaratory judgment with respect to the duty to defend is dismissed with prejudice. Because I further find that the claim for declaratory judgment with respect to the duty to indemnify involves factual issues that will be litigated in the underlying actions, that claim is dismissed without prejudice.

### Background

The companies are in the business of installing industrial insulation. From approximately February of 1981 until sometime after July of 1991, Employers insured PIC under a commercial general liability insurance policy. Employers also insured Packings from sometime before July 1, 1989, until 1997.

Prior to July 1, 1989, Employers' policies (the "policies") afforded coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' ... caused by an occurrence ...." The policies defined "bodily injury" as a "bodily injury, sickness or disease sustained by a person, including death resulting from

any of these at any time, which occurs during the policy period." [1] An "occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which is neither expected nor intended from the standpoint of the insured."

Beginning on July 1, 1989, an asbestos exclusion was inserted in the policies. It provided: "This policy does not apply to injury ... arising out of the installation, existence, removal, or disposal of asbestos or any substance containing asbestos fibers."

In 1993 and 1994, eight separate actions were commenced against the companies in Rhode Island Superior Court. In all of those cases, the plaintiffs are seeking damages for personal injury or wrongful death allegedly attributable to exposure to asbestos installed by the companies. All or part of the periods of exposure alleged in the complaints are within the time that the policies were in effect. However, the complaints do not specify when the plaintiffs' symptoms first manifested themselves or when their conditions were diagnosed.

Employers argues that it has no duty to defend or indemnify the companies because, under the "manifestation" rule, an "occurrence" must take place during the policy period and there is no "occurrence" until an injury manifests itself. Employers contends that, since discovery reveals that it was not until after July 1, 1989, that any of the plaintiffs in the underlying suits were diagnosed as having an asbestos related injury, the asbestos exclusion precludes coverage.

### Discussion

I. *Discretion to Entertain Declaratory Judgment Actions*

The first issue to be addressed is whether the Court should exercise its discretion to postpone or decline consideration of Employers' claim for declaratory judgment.

---

**1.** Beginning on July 1, 1987, the requirement that the injury occur during the policy period was eliminated from the definition of "bodily injury." However, another provision was inserted in the policy stating: "This insurance applies only to 'bodily injury' which occurs during the policy period."

The language of the Declaratory Judgment Act, 28 U.S.C. § 2201, is permissive rather than mandatory. The Act provides that district courts "may," award declaratory relief but it does not require them to exercise their jurisdiction over declaratory judgment cases. *Id.* § 2201(a); *Aetna Cas. & Sur. Co. v. Kelly,* 889 F.Supp. 535, 539 (D.R.I.1995) (citations omitted). Accordingly, district courts have discretion to dismiss or stay an action for declaratory judgment. *See Wilton v. Seven Falls Co.,* 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

■ However, that discretion is not unbounded. A decision to dismiss or stay must rest on "considerations of practicality and wise judicial administration." *Id.* at 288, 115 S.Ct. at 2143. The relevant inquiry is whether proceeding with the declaratory judgment action will result in piecemeal litigation, duplication of effort and the possibility of inconsistent results. *See Kelly,* 889 F.Supp. at 541.

■ In insurance coverage cases where a parallel state action is pending, the factors to be considered include:

1. Whether the same parties are involved in both cases.

2. Whether the claims made in the declaratory judgment action can be adjudicated in the state court action.

3. Whether the issues presented are governed by state or federal law.

4. Whether resolution of those issues turns on factual questions that will be litigated in the state court action.

5. What effect the declaratory judgment action is likely to have on potential conflicts of interest between the insurer and the insured.

*See id.,* at 539–40 (*citing Wilton,* 515 U.S. at 283, 288, 115 S.Ct. at 2141, 2143; *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 495, 62 S.Ct. 1173, 1175–76, 86 L.Ed. 1620 (1942); *Metropolitan Property and Liability Ins. Co. v. Kirkwood,* 729 F.2d 61, 63 (1st Cir.1984); and *Employers' Fire Ins. Co. v. Beals,* 103 R.I. 623, 240 A.2d 397, 403–04 (R.I.1968)).

In this case, most of those factors clearly weigh in favor of dismissing or staying the declaratory judgment action. All of the defendants are parties to the underlying suits and Employers, as the companies' insurer, is an indirect participant. Moreover, Employers' claims for declaratory judgment can be adjudicated pursuant to the Rhode Island Declaratory Judgment Act. R.I. Gen. Laws § 9–30–1. Indeed, state court would be the more appropriate forum in which to resolve the coverage issues because those issues are governed by state law.

It is much more difficult to determine the extent to which resolution of the coverage issues turns on factual questions that will be litigated in the underlying suits and the effect that the declaratory judgment action is likely to have on potential conflicts of interest between Employers and the companies. Making those determinations requires separate analyses of the duty to defend and the duty to indemnify.

## II. *The Duty to Defend*

■ Under Rhode Island law, an insurer's duty to defend is broader than its duty to indemnify. *See Mellow v. Medical Malpractice Joint Underwriting Assn.,* 567 A.2d 367, 368 (R.I.1989); *Beals,* 240 A.2d at 403. An insurer is obliged to defend its insured "if the factual allegations contained in the *complaint* raise a reasonable possibility of coverage." *Kelly,* 889 F.Supp. at 541 (citations omitted). That obligation exists even though the claim against the insured appears to lack merit, *see Flori v. Allstate Ins. Co.,* 120 R.I. 511, 388 A.2d 25, 26 (R.I.1978), and even though there may be additional facts tending to negate coverage. *See id.* at 25; *Beals,* 240 A.2d at 402–03.

■ Thus, in determining whether a duty to defend exists, there is no need to resolve any factual issues. The determination involves "nothing more than comparing the allegations in the complaint with the terms of the policy. If the facts alleged in the complaint fall within the risks covered by the policy, the insurer is obligated to defend. Otherwise, it is not." *Kelly,* 889 F.Supp. at

541 (citing *Flori*, 388 A.2d at 25).[2]

■ Here, the complaints in the underlying suits contain factual allegations that raise a reasonable possibility of coverage. The complaints allege that the plaintiffs were injured as a result of being exposed to asbestos during the policy periods. As already noted, Employers argues that there must be an "occurrence" during the policy period and that no "occurrence" took place until after July 1, 1989, when the plaintiffs were diagnosed as having asbestos related injuries. However, there are several flaws in that argument.

First, determining whether a duty to defend exists turns on the factual allegations in the complaint. *See id.* at 541; *Flori*, 388 A.2d at 26. It is inappropriate to base that determination on additional facts asserted by the insurer (i.e., that the plaintiffs were not diagnosed until after July 1, 1989), particularly when those additional facts may be disputed. *See Flori*, 388 A.2d at 26.

In addition, Employers' argument is inconsistent with the terms of its own policies. The policies define an "occurrence" to include "continuous or repeated exposure to substantially the same general harmful conditions." There is nothing in the policies that requires an "occurrence" to take place during the policy period. Employers' reliance on *CPC International, Inc. v. Northbrook Excess and Surplus Insurance Co.*, 668 A.2d 647 (R.I. 1995), and *Eagle–Picher Industries, Inc. v. Liberty Mutual Insurance Co.*, 682 F.2d 12 (1st Cir.1982) is misplaced. Although both cases held that there was no occurrence until an injury or damages became manifest, their holdings were based on definitions of "occurrence" that materially differ from the definition contained in Employers' policies.

The policies at issue in both *CPC* and *Eagle–Picher* defined "occurrence" as an event "which results, *during the policy period*, in personal injury [or] property damage." *See Eagle–Picher*, 682 F.2d at 17; *CPC*, 668 A.2d at 649 (emphasis added). In each case, the court held that, because an injury or property damage does not take place until it "is discovered or manifests itself," there could be no "occurrence" until that time; and, since there was no occurrence during the policy period, coverage was lacking.

■ By contrast, Employers' policies define an "occurrence," merely, as "an accident, including continuous or repeated exposure." The policies make no reference to when the injury must take place in order for an event to constitute an "occurrence." Consequently, the time at which an injury manifests itself is irrelevant for purposes of determining when an "occurrence" took place.

Employers might, but does not, argue that coverage, under its policies, is triggered only if the *injury* occurs during the policy period; and, that, under the "manifestation" rule, an injury takes place when it becomes manifest. However, even if the "manifestation" rule applies,[3] coverage would not be precluded.

■ Under the manifestation rule an injury takes place "when ... damage ... [or] loss ... manifests itself or is discovered or in the exercise of reasonable diligence, is discoverable." *CPC*, 668 A.2d at 649. Here, the complaints in the underlying suits make no reference to when the plaintiffs' injuries first manifested themselves or were discovered or discoverable. The mere fact that the plaintiffs were not diagnosed as suffering from asbestos related injuries until after July 1, 1989, does not exclude the possibility that

---

2. However, a plaintiff cannot "plead into" coverage by labeling the claim as something that is inconsistent with the factual allegations in the complaint. *See Peerless Ins., Co. v. Viegas*, 667 A.2d 785, 788–89 (R.I.1995) ("The fact that [sexual molestation] allegations in [the] complaint are described in terms of 'negligence' is of no consequence. A plaintiff, by describing his or her cat to be a dog, cannot simply by that descriptive designation cause the cat to bark.").

3. Rhode Island has not unqualifiedly adopted the manifestation rule. In *CPC*, the Rhode Island

Supreme Court, in answering a certified question posed by the First Circuit, applied the manifestation rule based upon particular and specific provisions contained in the defendant-insurer's general liability policy. *See CPC*, 668 A.2d at 649 ("Read together, the provisions of the Northbrook policy provide [that] ... there can be no occurrence ... without property damage that becomes apparent during the policy period, and property loss and compensable damages cannot be assessed unless the property damage is discovered or manifests itself.").

their injuries manifested themselves or were discoverable prior to that time. Indeed, the First Circuit has said that there is a rebuttable presumption that asbestosis is diagnosable six years before an actual diagnosis is made. *See Eagle–Picher Indus., Inc. v. Liberty Mut. Ins. Co.*, 829 F.2d 227, 237 (1st Cir.1987).

■ In short, adjudication of the coverage issue does not require resolution of any factual questions that will be litigated in the underlying suits. The factual allegations in the complaint establish a reasonable possibility of coverage.

The absence of factual issues bearing on Employers' duty to defend also eliminates the risk that proceeding with the declaratory judgment action would create a conflict of interest between Employers and the companies with respect to defense of the underlying litigation. Since determining whether there is a duty to defend requires nothing more than comparing the complaints in the underlying suits to the language of the policies, there is no danger that rendering a declaratory judgment on that issue will expose the companies to liability in the underlying suits.

Because there is no reason why this Court should decline to decide whether Employers has a duty to defend the companies in the underlying suits; and, because there is a reasonable possibility of coverage, Employer's request for a judgment declaring that it has no duty to defend is dismissed with prejudice.

III. *The Duty to Indemnify*

■ Unlike the duty to defend, an insurance company's obligation to indemnify depends upon whether the actual facts upon which the insured's liability ultimately is predicated fall within the coverage of the policy. Ordinarily, when a disclaimer of coverage rests on purely legal grounds or requires a resolution of factual issues that are separate and distinct from the factual issues to be litigated in the underlying state court action, proceeding with the declaratory judgment case is appropriate. On the other hand, when the coverage questions turn on factual issues presented in the underlying litigation, considerations of "practicality and wise judicial administration" counsel against proceeding with the declaratory judgment case "in order to avoid duplicative proceedings, to preserve the insured's prerogative to select the forum and to avoid the risk of inconsistent judgments." *Kelly*, 889 F.Supp. at 540 (*citing Kirkwood*, 729 F.2d at 62–63).

■ Here, in order to ascertain when the plaintiffs' injuries manifested themselves, it would be necessary to determine when those injuries were discovered or discoverable. The evidence required to make that determination is inextricably intertwined with the evidence regarding causation and damages that will be presented in the underlying litigation. Consequently, litigating the issue in this case would involve the kind of duplication of effort that is inconsistent with wise judicial administration.

In addition, proceeding with the declaratory judgment action would cast Employers in the role of adversary to the companies in the underlying suits. As matters presently stand, Employers and the companies share a common interest in showing that, prior to July 1, 1989, the plaintiffs knew that they had been diagnosed as having asbestos-related injuries. Such a showing would support the companies' defense that the underlying actions are barred by the statute of limitations because they were not commenced within three years after diagnosis.[4] However, if, in this declaratory judgment action, Employers succeeds in establishing that the plaintiffs were not diagnosed until after July 1, 1989, it will deprive the companies of their statute of limitations defense and expose them to liability. Thus, proceeding with the

---

4. Under Rhode Island law, the statute of limitations for personal injury is three years from the date that the cause of action accrues. R.I. Gen. Laws § 9–1–14. Generally, a cause of action accrues and "the statute-of-limitations clock starts ticking at the time that an injury occurs." *Soares v. Ann & Hope of Rhode Island, Inc.*, 637 A.2d 339, 352–53 (R.I.1994). However, in the case of an asbestos-related injury, the statute of limitations does not begin to run until the claimant is notified that his condition has been diagnosed as asbestos related. *See* R.I. Gen. Laws § 23–24.5–15(c).

declaratory judgment action would "convert [Employers and the companies] from allies to adversaries with respect to issues that are critical to adjudication of the [companies'] tort liability" thereby violating Employers' obligation to protect its policy holders from claims asserted by third parties. *Id.* at 541.

■ Since all of the pertinent factors militate against proceeding with a declaratory judgment action regarding Employers' duty to indemnify, the only remaining question is whether that aspect of the declaratory judgment action should be dismissed or, merely, stayed pending resolution of the underlying litigation.

Simply staying this case pending resolution of the underlying litigation would accomplish little. Although the factual issues upon which coverage turns will be litigated in the state court cases, they probably would have to be relitigated here because it is unlikely that this Court could determine how the state courts decided those issues. For example, if general verdicts are returned in favor of the plaintiffs, there would be no way of knowing what factual findings may have been made with respect to the dates of exposure, the dates on which the plaintiffs' injuries manifested themselves, or the dates on which plaintiffs learned that their injuries had been diagnosed as asbestos related. Special verdicts or jury interrogatories might provide the answers to such questions; but, there is no assurance that those devices will be utilized or that any questions posed to the jury will address the precise coverage issues presented in this case.

In short, merely staying the declaratory judgment action is likely to result in the kind of duplication of effort and possibility of inconsistent results that wise judicial administration seeks to avoid. Under these circumstances, the objective of wise judicial administration is better served by dismissing the declaratory judgment action and allowing the coverage issues to be addressed by the same court that hears the underlying tort cases.

### Conclusion

For all of the foregoing reasons, Employers' claim for a declaratory judgment declaring that it has no duty to defend PIC and Packings in the underlying litigation is dismissed with prejudice and its claim for a declaratory judgment declaring that it has no obligation to indemnify PIC and Packings is dismissed without prejudice to being asserted in Rhode Island Superior Court.

IT IS SO ORDERED,