DECISION
This matter is before the Court on Zurich American Insurance Company's ("Zurich") Motion to Dismiss the Amended Complaint of Plaintiffs Candleberry Realty Company, Inc. ("Candleberry") and St. Angelo Motors, Inc. ("St. Angelo") relating to a dispute over insurance coverage for removal and remediation of a leaking underground gasoline storage tank that was discovered in the course of selling the subject property. Candleberry seeks a *Page 2 
judgment declaring that Zurich must indemnify it for any liability imposed upon Candleberry in the pending related suits brought by the environmental cleanup vendors who conducted the remediation.[1]
Defendant Zurich maintains that no justiciable issue is currently before the Court because Zurich has acknowledged coverage (albeit only for what it deems reasonable expenses) and that Candleberry's underlying liability is still being litigated. Accordingly, Zurich moves for dismissal or, alternatively, a stay pending resolution of the underlying controversy.
Also before the Court is the issue of consolidation of the three pending matters that arose from the above-mentioned transaction. Specifically, Taraco Precision Testing, Inc. ("Taraco") seeks to consolidate for the purpose of discovery from Zurich.
 I Standard of Review
The Court enjoys broad discretionary powers under the Rhode Island Uniform Declaratory Judgments Act ("Act"). Section 9-30-1, entitled "Scope," provides in relevant part:
 The superior . . . court . . . shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree. G.L. 1956.
Section 9-30-2 allows "any person interested" under a contract (among other things) to "have determined any question of construction or validity arising under the instrument . . ." G.L. 1956. Moreover, Section 9-30-3, entitled "Construction of contracts," states: "A contract may be construed either before or after there has been a breach thereof." G.L. 1956. Finally, Section 9-30-12 *Page 3 
provides that the Act "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and is to be liberally construed and administered." G.L. 1956.
Against this statutory backdrop, our Supreme Court recently reviewed the standards that inform whether an actual case or controversy exists:
 A necessary predicate to the court's exercise of its jurisdiction under the Uniform Declaratory Judgments Act is an actual justiciable controversy. By definition, a justiciable controversy must contain a plaintiff who has standing to pursue the action; that is to say, a plaintiff who has suffered injury in fact. Injury in fact may be characterized as an invasion of a legally protected interest which (a) is concrete and particularized *** and (b) actual or imminent, not conjectural or hypothetical. Furthermore, justiciability is not present unless the facts of the case yield some legal hypothesis which will entitle the plaintiff to real and articulable relief." Meyer v. City of Newport, 844 A.2d 148, 151 (R.I. 2004) (quotations and citations omitted).
Thus, the Supreme Court has set forth a two-part test for jurisdiction under the Act: injury in fact plus a legal hypothesis. Id.
Not only is the jurisdictional scope of the Act fairly broad, the hurdle to clear in order to succeed with a motion to dismiss generally is rather high. Our Supreme Court has stated that "a complaint should not be dismissed on the grounds of a failure to state a claim upon which relief can be granted unless it is clear beyond a reasonable doubt that the plaintiff is not entitled to relief no matter what set of facts might be proved in support of the claim." Redmond v. R.I. Hosp. TrustNat'l Bank, 386 A.2d 1090, 1092 (R.I. 1978) (citing Bragg v. WarwickShoppers World, Inc., 227 A.2d 582 (R.I. 1967)).
Yet, despite the wide jurisdiction afforded courts under the Act and the plaintiff-friendly motion to dismiss standard, the Court nevertheless retains significant discretion within the realm *Page 4 
of declaratory judgment. In Employers' Fire Insurance Company v.Beals, our Supreme Court explained:
 Our declaratory judgment act is concerned with the remedy, the granting of which is purely discretionary. This discretionary power remains intact despite the technical sufficiency of the complaint to withstand a 12 (b) (6) motion or its apparent efficacy to invoke the court's jurisdiction. Thus, even if the complaint contains a set of facts which bring it within the scope of our declaratory judgments act, there is no duty imposed thereby on the court to grant such relief, but rather the court is free to decide in the exercise of its discretion whether or not to award the relief asked for. 240 A.2d 397, 400-01 (R.I. 1968).
Accordingly, the Court need not grant declaratory judgment even though otherwise within its jurisdiction. In exercising this discretion, some of the factors for the court to consider include:
 the existence of another remedy, the availability of other relief, the fact that a question may readily be presented in an actual trial, and the fact that there is pending, at the time of the commencement of the declaratory action, another action or proceeding which involves the same parties and in which may be adjudicated the same identical issues that are involved in the declaratory action. Berberian v. Travisono, 332 A.2d 121, 123-24 (R.I. 1975).
These general factors suggest the discretionary nature of the Act even when technical jurisdiction exists. The Berberian Court, quoting the United States Supreme Court with approval, explained: "the existence of jurisdiction does not mean that it must be exercised and that grounds may not be shown for staying the hand of the Court . . . The question is one for the sound discretion of the [court]." Id. at 123 (quoting KansasCity S. Ry. v. United States, 282 U.S. 760, 763 (1931)). The federal courts assume a similar posture: "The [federal] Declaratory Judgment Act . . . neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies. Such discretion endures even when the suit otherwise satisfies subject matter jurisdictional *Page 5 
prerequisites." Standard Fire Ins. Co. v. Gordon, 376 F. Supp. 2d 218,223 (D.R.I. 2005) (citations and quotations omitted).
In sum, this Court maintains discretion as to whether to award declaratory relief even when threshold jurisdiction is satisfied. Of course, "this discretion is not absolute and its exercise is subject to appropriate appellate review." Beals, 240 A.2d at 401. See alsoRedmond, 386 A.2d 1090 (reversing the trial court's dismissal of a complaint for declaratory judgment).
 II Analysis A Declaratory Judgment
In addition to the general principles referenced above, precedent provides further guidance on the application of the Act in contexts with insurance carriers and/or contingent liabilities in underlying actions.
In Beals, the insurer sought a declaratory judgment that it was not liable for the injuries caused by a minor insured who struck a fellow third-grade pupil in the eye with a pencil, asserting that the conduct was intentional and therefore excluded from coverage. 240 A.2d 397 (R.I. 1968). Our Supreme Court affirmed the dismissal of the insurer's complaint, noting that the Act
 was not designed to compel an injured person, himself not being a party to the insurance contract, to litigate issues in a declaratory judgment action which would otherwise be tried in the pending tort suit. In short, . . . the declaratory judgment should not be used to force the parties to have "a dress rehearsal" of an important issue expected to be tried in the injury suit. Id. at 400.
The Supreme Court also noted that the "utility of a declaratory judgment action in liability insurance cases cannot be denied, for it is a remedy readily adaptable to controversies in which *Page 6 
there is a hassle over the coverage offered by a policy as applied to a crystallized set of facts." Id. at 401 (citing Appleman, Insurance Lawand Practice, § 11332 at 109). But after lauding the benefits of declaratory actions in the insurance context, the Supreme Court further explained that:
 it is nonetheless proper for a court in the exercise of its discretion to refuse to grant a declaratory judgment under certain circumstances. Certainly before such a judgment is awarded, the court must carefully examine and weigh all relevant factors which bear on the propriety of granting this type of relief in order to be assured that no rights of any interested party will be abused in the process. Among the factors considered by courts in this regard are the inconvenience and burden to the respective litigants and the inequitable conduct on the part of the party seeking relief. Id.
In addition to weighing the relevant factors surrounding the case, the Supreme Court further explained that a court must examine the issues:
 If the troublesome issue giving rise to the insurer's dilemma is one which is separable from the issues waiting to be litigated in the principal tort suit, a declaratory judgment should be liberally awarded. Advance determination of such issues is of great assistance to all the parties; and an early resolution of questions of this type, generally speaking, does not adversely affect the interest of the injured party. . . . On the other hand, if the vexatious issue giving rise to the conflict of interests between the insured and the insurer is inextricably related to those issues which will ultimately determine the insured's liability to the injured party in the tort suit, courts normally and justifiably deny the application for a declaratory judgment. Id. at 401-2.
In contrast to the case now before this Court, the declaratory judgment action in Beals was brought by the insurer, and the court there seemed most concerned with the behavior of the insurance company and its impact upon the victim in the underlying action. See id. at 402 (expressing concerns with any "harsh expense [to] the injured party," "permitting insurance companies to assume unfairly the control and command of the tort litigation," and "jeopardiz[ing] the injured party's right to direct, control and manage the course of his injury *Page 7 
suit"). The plaintiffs in the underlying actions here, Taraco Precision Testing, Inc. ("Taraco") and American Reclamation Corporation ("American"), do not appear to be concerned that the declaratory judgment action will harm them. Indeed, at oral argument, counsel for Taraco and American seemed to manifest a preference for early resolution of the dispute between Zurich and its insured rather than adding further delay to the ultimate resolution of their claims.
Nor does there appear to be the type of inherent conflict of interest between the insurer and its insured as was threatened inBeals. There, the insurance company noted the "perplexing dilemma" presented because its interests were best served if it proved that the minor insured intentionally stabbed his classmate in the eye, as opposed to the insured's best interests being served if the eye injury was proven accidental. Id. at 400. No such conflict is apparent here because Zurich's main position — that Taraco and American performed more remediation than was reasonably necessary — is not inconsistent with Candleberry's interests. Though the issues between Zurich and its insured do appear to be "inextricably related" to the underlying issues (which might weigh against a co-occurring declaratory judgment action particularly if the insured is faced with a conflict of interests), no adverse impact to the interests of Taraco or American is apparent.[2]
Of course, the Court cannot exercise its discretion unless it has an actual case or controversy with which to begin. Indeed, this is Zurich's leading argument as it claims that it has acknowledged coverage under the policy. (Def's Mem. Supp. Mot. Dismiss at 6). To be sure, Zurich has acknowledged coverage for some expenses — site excavation and backfill, soil transport and disposal, groundwater monitoring, and regulatory reporting — at amounts it deems *Page 8 
reasonable. (Letter from Zurich to Att'y Swan of 6/28/07, at 5). However, besides contesting what amounts are reasonable in the acknowledged categories of coverage, Zurich is also refusing coverage outright for other categories of expenses (Id. at 7). For example, Zurich asserts that there is no coverage for the actual removal of the underground storage tank (only the contaminated soil). Similarly, Zurich refuses to cover "other costs associated with the UST closure beyond the costs necessary to remove the contaminated soil." Zurich further denies coverage for removal and disposal of the petroleum that was contained within the tank. Finally, Candleberry also seeks reimbursement for the cost of patching and repairing the parking lot. (Am. Compl. at 5). These categories of denied expenses present a justiciable controversy regardless of the ultimate outcome of the categories where Zurich acknowledges some coverage.[3]
In FleetBoston Financial Corp. v. Advanta Corp., this Court addressed the question of when a justiciable controversy arises in a contract case before the breach actually occurs. 2003 WL 22048742 (R.I.Super.). The plaintiffs there, in connection with the purchase of a business, sought indemnification from the sellers for federal tax liabilities that were assessed but had administrative and judicial appeals pending.Id. The defendant-sellers there argued that there was no justiciable controversy before the Court because the actual amount of tax liability was pending in underlying actions. Id. This Court refused to dismiss the plaintiffs' declaratory judgment action and instead found that a justiciable case and controversy existed even though the ultimate amount of tax liability was theretofore unsettled. Id. at *5. Zurich would distinguish FleetBoston because the defendant-sellers there denied any liability whatsoever where here *Page 9 
Zurich acknowledges (some) liability but merely disputes the amount.See id at *3. However, as discussed above, Zurich has not acknowledged liability for all categories of expenses claimed by the Plaintiffs. InFleetBoston, this Court found that a "controversy real in nature" arose when the plaintiffs' indemnification request was rejected. Id. So it is here: Zurich's letter of June 28, 2007 provides the factual predicate upon which a case or controversy exists.[4]
Zurich's refusal to cover certain categories of expenses claimed by its insured provides sufficient grounds in and of itself to refuse to grant its motion to dismiss. Accordingly, this Court need not decide whether the existence only of categories of expenses for which Zurich acknowledges coverage (but does so only for what it deems as necessary expenses) would be sufficient to constitute a justiciable case and controversy. To the extent that the amount of these expenses will be litigated in the underlying action, such claims arguably become more hypothetical and less concrete, particularized, actual, or imminent.[5] See Meyer, 844 A.2d at 151.[6]
As Zurich requests, even if the Court assumes jurisdiction and denies the motion to dismiss, it still could simply stay the matter. Scant Rhode Island precedent exists to illuminate *Page 10 
what factors should guide the Court when considering whether to stay a matter.[7] Jurisprudence in this area is far more developed in the federal system. See, e.g., Standard Fire Ins. Co. v. Gordon,376 F. Supp. 2d 218, 224-25 (D.R.I. 2005) (discussing factors to consider). Though not binding authority upon the administration of Rhode Island courts, it is worth noting that the United States District Court for the District of Rhode Island recently confirmed in Pardee v. ConsumerPortfolio Services that it was within its inherent discretionary powers to stay a case in lieu of dismissing it when prudent and fair to do so.344 F. Supp. 2d 823, 833 (D.R.I. 2004). The Pardee Court also quoted the United States Supreme Court to state:
 "`. . . the power to stay proceedings is incidental to the power inherent in every court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" Id. (quoting Landis v. N. Am. Co., 299 U.S. 248, 254-25
(1936)).
 B Consolidation
Though the Court has the inherent power to issue a stay in this case, judicial economy is best served not by staying the action, but rather by consolidating it along with the underlying actions. Rule 42(a) of the Superior Court Rules of Civil Procedure provides:
 When actions involving a common question of law or fact are pending before the court, in the same county or different counties, it may order a joint hearing or trial of any or all matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. *Page 11 
Our Supreme Court explained the Court's inherent power of consolidation in Giguere v. Yellow Cab Co.:
 . . . the trial court has inherent power to order that several cases pending before it be tried together where they are of the same nature, arise from the same act or transaction, involve the same or like issues, depend substantially upon the same evidence, even though it may vary in its details in fixing responsibility, and where such a trial will not prejudice the substantial rights of any party. 195 A. 214, 216 (1937).
Such inherent power to consolidate is "left to the sound discretion of the trial court" and "should be exercised with great caution and only after a careful consideration of all the facts and circumstances."Id.
Furthermore, this Court need not consolidate cases all the way through trial. Under Rule 42, this Superior Court can order consolidation only for discovery or perhaps pretrial motion practice, all the while reserving judgment on whether to consolidate for trial. Triton RealtyLtd. Partnership v. Almeida, No. 04-2335, No. 03-2061, 2005 WL 1984437, at *1 (R.I.Super. Aug. 17, 2005) ("consolidating the two cases for the purpose of deposing witnesses will serve the purposes of conserving the resources of the parties, witnesses, and this Court"). This is the most prudent path for the Court to take at this time. The Court sees no risk of prejudice to Zurich because, after all, Zurich's interest in proving what expenses were "necessary" in its defense against Candleberry's declaratory action is basically the same as when defending its insured — which of course it is obligated to do — in the underlying action against Taraco and American.
The question remains, however, even with the Court's order to consolidate the matters at hand, whether Taraco's ability to obtain discovery from Zurich will be affected. As both parties point out, consolidated cases "remain distinct throughout . . . a trial and every legal right is preserved to the respective parties as fully as if the cases had been tried separately." O'Brien v. *Page 12 Waterman, 91 R.I. 374, 379 (1960). The Court in O'Brien went on to state that consolidation does not "operate to expand or extend any of the legal rights of [the] parties." Id.
It is Zurich's contention that Taraco seeks to circumvent § 27-7-2 of the R.I.G.L. by way of this consolidation. Under § 27-7-2, "an injured party . . . shall not join the insurer as defendant." In fact, only after having obtained judgment against the insured may the plaintiff proceed on that judgment in a separate action against the insurer. It is the public policy of this State that insurers not be joined in the initial action to prevent the mention of insurance in an action against the insured. See Walsh v. Carroll, 169 A. 743 (R.I. 1934).
Here, Zurich is not a party to the initial Taraco action. Seeking to obtain discovery from Zurich as if it were a party, therefore, is overreaching by Taraco. Of course, the consolidation of the instant matters will not interfere with or alter the legal rights of the involved parties, and Zurich may remain separate for the purposes of discovery. Once liability has been determined in the initial Taraco matters, Taraco may then institute further proceedings against Zurich as the responsible party.
 Conclusion
Based on the broad scope of jurisdiction granted to the Court under the Act, the Court finds that an actual case and controversy among Candleberry, St. Angelo, and Zurich presently exists, that the Court does have jurisdiction, and that Rule 12(b)(6) is defeated. The Court likewise declines to deny jurisdiction at this time under its discretionary powers. For the sake of judicial economy, the Court will consolidate the instant disputes for discovery and pretrial motions at this time. Additionally, the Court will consolidate only the Taraco v.FW Realty (C.A.07-1292) and American Reclamation Corp. v. FW Realty(C.A. 07-1791) matters for trial. The Court, however, reserves its discretion to further consolidate the Candleberry Realty v. *Page 13 Zurich American Insurance for the purposes of trial, to stay the matter in the future, or to actually grant the declaratory relief sought until further proceedings unfold or eventually on the merits.
Counsel for Candleberry and St. Angelo may present an appropriate order consistent herewith which shall be settled after due notice to counsel of record.
[1] Taraco Precision Testing, Inc. v. FW Realty, LLC and CandleberryRealty Co., Inc., C.A. No. 07-1292, and American Reclamation Corp. v. FWRealty, LLC, Candleberry Realty Co., Inc., St. Angelo Motors, Inc., andTaraco Precision Testing, Inc., C.A. No. 07-1791 are now consolidated. In addition to indemnification, the Plaintiffs also seek the reasonable costs of repairs to the parking lot on the property, attorney's fees, interest, and costs.
[2] This Court is also not faced with the additional concerns presented when an insurer seeks a declaratory judgment in federal court relating to an underlying tort action against its insured in state court. See, e.g., Standard Fire Ins. Co. v. Gordon, 376 F. Supp. 2d 218,224-25 (D.R.I. 2005) (discussing factors to consider when deciding whether to dismiss or stay a federal declaratory judgment action when there is an underlying state action).
[3] Besides finding that the existence of these denied expenses easily confers jurisdiction upon this Court, the Court notes that at least this part of the policy coverage dispute between Zurich and its insured will not involve the "same parties" and the adjudication of the "same identical issues" as in the underlying action with Taraco and American, a factor that Berberian requires the Court to consult when considering the discretionary exercise of declaratory relief.332 A.2d at 123-24.
[4] In FleetBoston, this Court noted and implicitly adopted the plaintiffs' arguments there that a justiciable controversy existed because, beside the basic tax liability subject to appeal the plaintiffs also claimed indemnification for other costs such as legal expenses that had been incurred and they also pointed to a dispute over the meaning of the contractual indemnification provisions. Id. at *5. Similarly here, the denied categories of coverage demonstrate that there is more at issue here than simply the amount due to Taraco and American within the categories of expenses that Zurich acknowledges fall within the nominal coverage of the policy.
[5] The Court does observe, however, that there is a wide chasm between Zurich's agreement to pay $170,000 and the underlying invoices of $642,000. One might suppose that the larger the prima facie difference, the less hypothetical the alleged injury-in-fact.
[6] But see ACandS, Inc. v. Aetna Cas. Sur. Co., 666 F.2d 819,822-23 (3rd Cir. 1981) ("There is sometimes a fine line between the hypothetical and the concrete . . . Declaratory suits to determine the scope of insurance coverage have often been brought independently of the underlying claims albeit the exact sums to which the insurer may be liable to indemnify depend on the outcome of the underlying suits." (citations omitted)). The Court of Appeals also noted the importance of declaratory judgment in the insurance context so that the parties could shape their settlement strategies: "It would turn the reality of the claims adjustment process on its head to hinge justiciability of an insurance agreement on the maturation of a suit to judgment when the overwhelming number of suits are resolved by settlement." Id. at 823.
[7] The parties have provided no direct Rhode Island authority relating to the staying of matters as distinguished fromdismissing them or otherwise exercising discretion to deny declaratory relief. Plaintiffs suggest none; Zurich points to the federal courts and an indirect reference to Beals (Def.'s Mem. Supp. Mot. Dismiss at 12).Beals, 240 A.2d at 401-02, however, does not directly address the precise issue of when to stay as opposed to other dispositions. To be sure, questions of whether to dismiss, deny discretionary relief, or stay all turn on overlapping or even similar considerations. Yet the Court notes that its inherent powers to manage its docket have not been expressly defined and in any event are not rigidly circumscribed by cases such as Beals. *Page 1