DECISION
This matter is before the Court in a jury waived trial, on plaintiff's request for a declaratory judgment. Plaintiff requests the entry of a declaratory judgment finding a decision of the East Greenwich Planning Board to be null and void as it required an additional condition to his permit for a master plan. Specifically, he claims that the new permit requires the construction of a water line. Mr. D'Ellena claims that the action of the Planning Board is void as the applicant did not request a change. The action of the Planning Board violated the provisions of the open meetings act and violated the constitutional requirements for due process. For the reasons set forth below, the Court finds that this Plaintiff's claims for declaratory relief are denied and judgment is awarded to the Town of East Greenwich.
 I. Findings of Facts
Mr. Carmine D'Ellena is a developer of high-end homes in East Greenwich and surrounding areas. He is a licensed attorney who has developed a number of sub-divisions in East Greenwich. *Page 2 
In late 2000 or early 2001, Mr. D'Ellena began the process of applying for the approved of the "Legacy Woods" sub-divisions off of Shippee Road in East Greenwich. During the pre application stages he represented himself, but retained attorney Peter Nolan for the later hearings.
In January 2001, hearings were held on Mr. D'Ellena's application for a master plan for Legacy Woods before the East Greenwich Planning Board. In January 2001, the Planning Board approved the plan, indicating that no public water was needed, but "the dry water line shall be installed".[1] (Letter of Planning Chairman, Exhibit 3.) The applicant then proceeded to obtain preliminary approval of the sub-division. The Planning Board issued preliminary approval on October 17, 2001 without any discussion of the need for public water to the development. There was no appeal from this preliminary approval. Mr. D'Ellena then moved for final approval before the Planning Board. On December 5, 2001, the Planning Board issued a Decision approving the final plan (exhibit 5).
The Final Plan Approval permitted construction for one year. As Mr. D'Ellena would not construct any homes in the subdivision until 2004, he needed to continue to return to the Board to obtain annual extensions of his license. Each year, Mr. D'Ellena retained Mr. Nolan to return to the Planning Board to obtain this extension. This extension was given routinely in 2002 and 2003.
In late 2003, Mr. D'Ellena explored the feasibility of extending public water to the plat. In October, 2003 he had a conversation with officials at the Kent County Water Authority. Eventually they insisted that he purify the line. In a letter to the authority on October 28, 2003, (Exhibit 9), Mr. D'Ellena "committed to having an activated water line in my plat and *Page 3 
accordingly will pay all expenses. . . ." He priced the cost of extending the water line from Shippee Road to the sub-division, but refrained from doing so after he learned the cost of this extension would be approximately $200,000.00.
Peter Nolan is an experienced attorney with a concentration in land development. He has been a member of the Rhode Island Bar for 40 years, and has done land development transactions for over 25 years. Mr. Nolan was retained routinely without any special limitations or instructions on the scope of his reputation. The East Greenwich Planning Board was never informed that Mr. Nolan was limited in his ability to represent Mr. D'Ellena. The Court does not find that Mr. Nolan was limited in his ability to represent Mr. D'Ellena.
In January 2004, Mr. Nolan submitted the annual request for an extension of the subdivision approval on behalf of Mr. D'Ellena. In accordance with attorney Nolan's usual custom, he reviewed the East Greenwich Planning staff report prior to the Planning Board meeting. When he reviewed the staff report prior in early 2004, he recognized that the staff had a significant concern for the extension of public water to Legacy Woods. Attorney Nolan informed Mr. D'Ellena of this problem who agreed to add the condition of public water.
In August 2006, the Director of Public Works of East Greenwich informed Mr. D'Ellena of his need to extend a water line. Mr. D'Ellena then searched for the records of the Planning Board and retained counsel to fight this requirement. In December 2007, Mr. D'Ellena was formally informed that he was not in compliance. (Exhibit E.) Mr. D'Ellena did not review the transcript of the Planning Board meeting until 2008.
A meeting was held by East Greenwich Planning Board for the extension of Legacy Woods, Town Road Sub-Division on January 7, 2004. Mr. D'Ellena was not present, but *Page 4 
attorney Nolan represented him before the Board. Before the Board began discussion attorney Nolan indicated the following in his opening remarks:
 And also if you read the comments from staff concerning the water line, in speaking to Mr. D'Ellena, he's already indicated that he is already in the process of putting the water lines in the plat and he said, "I fully expect that I will bring water to that plat," he said "because I'm building houses in excess of a million dollars." And he said "Peter". — and I spoke with him this afternoon and he said "I fully expect that I'm going to bring water at my expense." I think that makes everybody happy. Tr. p. 3, line 18 through p. 4, line 4.
The following discussion was then held.
 Mr. Paolino [Planning Board Chairman]: Okay. Because right now master plan approval and preliminary has it so it's dry.
 Mr. Nolan: And final.
 Mr. Whitaker [East Greenwich Planner]: Final.
 Mr. Paolino: — and final. Okay.
 Mr. Nolan: That's right.
 Mr. Paolino: Would you be — I don't know if it's — I would be more comfortable with an amendment to the final.
 Mr. Nolan: I think that's fine. I don't have any objection to that, I really don't. If Mr. Whitaker wants to draft up a new final decision, I will record that when I record the plat. Tr. p. 4.
A discussion then followed concerning the need to advertise this change, and a neighbor testified concerning the future development of the subdivision. The Board then voted to "extend the final plan, the recording of the subdivision to March 15, 2005 . . . [w]ith the addition that the water lines will be brought to the sites." Tr. 10, lines 6, 7, 16, 17.
Abutters were never informed of the proposed changes.
 Discussion of Credibility of the Witnesses
Our Supreme Court encourages the trial courts to discuss credibility of witnesses when facts are an issue. State v. Forbes, 925 A.2d 929, 934
(2007). In this action, few facts are in dispute. Mr. D'Ellena was reasonable, clear and credible on his direct testimony. He was *Page 5 
knowledgeable of the planning approval process, but did not have a sharp or complete recollection of all of the individual events that occurred. Although he was well prepared, he depended upon exhibits as they were introduced. Mr. Nolan and Mr. D'Ellena disagreed concerning whether Mr. Nolan was authorized to represent to the Board that public water would be brought to the site. Mr. Nolan had a sharper recollection of his conversations with Mr. D'Ellena, and appeared to be consistent and thorough throughout. He was highly credible, expressed that it was his routine practice to discuss such staff issues with clients prior to the hearing, and his testimony was parallel to that which he provided to the Board as demonstrated by the transcript. The Court finds Mr. Nolan more credible, because he had a sharper recollection, his work was consistent with his regular practice, his testimony was in conformity with Exhibit 9, and for the other reasons discussed.
Two expert witnesses disagreed concerning whether the sub-division was a major subdivision or a minor sub-division. Mr. Whitaker, the chief planner for the Town of East Greenwich testified on behalf of the defendant, while Mr. Edward Pimental testified on behalf of Mr. D'Ellena. Mr. Pimental does consulting in the field of zoning and development, and has served on the planning staffs of East Providence, North Kingston, and Whelan, Massachusetts. Each of these gentlemen was called to testify on the issue of whether or not the water line would be a major change, requiring public notice.
While this is a legal issue dependent on conclusions of law, Mr. Pimental discussed the circumstances of the new water line. He testified that at least a quarter mile of road would need to be torn up, abutters would have their road blocked off, cutting them off and causing inconvenience. This, combined with the possibility that blasting would be needed to remove ledge, and the projected cost of $200,000, formed the basis of his conclusion that this change *Page 6 
was a major one. Mr. Whitaker found that the change would be a minor change. Although Mr. Whitaker had extensive experience in the planning field, he appreciated that at the time the closest line was 300 feet away and (a connection would need to be 300 foot in length). He also claimed that because master approval was already issued, a hearing was held and no one objected to public water in the area. Other neighbors had asked for public water and the fire department wanted public water. This somehow obviated the need for advertising. It appeared that although Mr. Whitaker was learned in the field, he was attempting to justify the conclusion that he had made before the Planning Board. At the original Planning Board meeting he stated that advertising was not necessary. The Court did not find Mr. Whitaker to be convincing on this issue.
 Analysis
Mr. D'Ellena seeks a declaratory judgment to declare the town's decision of May 5, 2004 null and void and to reinstate the January 4, 2001 Planning Board decision.
1. Mr. D'Ellena was not deprived of due process.
Mr. D'Ellena suggests that he was denied due process by the Town of East Greenwich. While his argument focuses on our state's Open Meeting Statutes, the Court will first address the alleged deprivation of Constitutional rights.
"An essential principle of due process is that a deprivation of life, liberty, or property `be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" Cleveland Board of Education.v. Loudermill, 470 U.S. 532, 542, 84 L. Ed. 2d 494, 105 S. Ct. 1487
(1985) (quoting Mullane v. Central Hanover Bank Trust Co.,339 U.S. 306, 313, 94 L. Ed. 865, 70 S. Ct. 652 (1950)); Concrete Pipe Productsof Cal., Inc. v. Construction Laborers Pension Trust for SouthernCalifornia., 508 U.S. 602, 617, 124 L. Ed. 2d 539, 113 S. Ct. 2264
(1993). "`Parties *Page 7 
whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' It is equally fundamental that the right to notice and an opportunity to be heard `must be granted at a meaningful time and in a meaningful manner.'" Fuentes v. Shevin, 407 U.S. 67, 80, 32 L. Ed. 2d 556,92 S. Ct. 1983 (1972) (quoting Baldwin v. Hale, 68 U.S. 223, 1 Wall. 223, 233,17 L. Ed. 531 (1864); Armstrong v. Manzo, 380 U.S. 545, 552,14 L. Ed. 2d 62, 85 S. Ct. 1187 (1965)) (other citations omitted).
Mr. D'Ellena was afforded notice. He was informed of the date and time of the meeting, elected not to attend, and sent counsel to represent him. He had an opportunity to be heard. In fact his attorney not only addressed the Planning Board, but participated in an extensive dialogue with the board members.
Mr. D'Ellena alleges that his notice was not meaningful as he was not apprised of the substantial proposed change to require an active waterline. However, his attorney acknowledges receiving a copy of the staff report which he understands will be discussed, and discussing the report with Mr. D'Ellena. Hence, Mr. D'Ellena (and his attorney) had meaningful notice and opportunity to be heard. Mr. D'Ellena was not deprived of constitutional due process.
2. The East Greenwich Planning Board did not strictly comply with thestatutory advertising requirements.
The statutory scheme requires public notice of major changes to approved subdivisions.
The pertinent statute states:
 § 45-23-65. Procedure — Changes to recorded plats and plans. —
 (a) . . .
 (b) Minor changes, as defined in the local regulations, to a land development or subdivision plan may be approved administratively, by the administrative officer, whereupon a permit may be issued. The changes may be authorized without additional public hearings, at the discretion of the administrative officer. All changes shall be made part of the permanent record of the project application. This provision does not prohibit the administrative *Page 8 
officer from requesting a recommendation from either the technical review committee or the planning board. Denial of the proposed change(s) shall be referred to the planning board for review as a major change.
 (c) Major changes, as defined in the local regulations, to a land development or subdivision plan may be approved, only by the planning board and must follow the same review and public hearing process required for approval of preliminary plans as described in § 45-23-42
 (d) . . .
 R.I.G.L. 1956 45-23-65
The East Greenwich Town Ordinances parallel the State's statutes for advertisement.
 (b) Minor changes, as defined below, to a land development or sub division plan may be approved administratively by the administrative officer, whereupon a permit may be issued. Such changes may be authorized without additional public hearings at the discretion of the administrative officer.
 For the purpose of this section, the term "minor changes" shall mean any change, which in the opinion of the Administrative Officer is consistent with the intent of the original approval. Such minor changes shall include, but are not necessarily limited to the following:
 (1) amendments or changes to utility plans which are in accord with the Town of East Greenwich specifications and approved by the appropriate utility company.
 (2) lot line revisions, . . .
 (3) amendments or changes to grading plans or drainage plans . . .
 (4) as approved by The Administrative Officer amendments or changes to construction plans which are required because of on scene physical conditions on the parcel being sub-divided . . .
 (5) modifications, which are required by outside permitting agencies such as but not limited to the Department of Environmental Management, and the Department of Transportation.
 (c) Major changes. Major changes to a land development sub division plan may be approved only by the permitting authority. The procedure of approval of any such major changes shall follow the same review and public hearing process as required for preliminary approval to a major land development and major sub-division as provided in section 18.
 For the purpose of these Regulations the term "major changes" shall mean changes which, in the opinion of The Administrative Officer are clearly contrary to the intent of the original approval. Such major changes shall include, but are not necessarily limited to the following:
 (1) Changes which will have an effect on creating additional lots or dwelling units for development; *Page 9 
 (2) Changes which would be contrary to any applicable provision of Zoning Ordinance . . ., or
 (3) Changes, which have significant adverse impacts on abutting properties or property in the vicinity of the proposed sub-division or land development project.
 (4) Changes which may have a significant adverse impact on any public service, utility or road.
 Section 41, subsections (b)and (c) of the Town of East Greenwich Development and Sub-Division Review Regulations.
While the town planner, as the administrative officer, may be empowered to decide whether the change is major or minor in the first instance, his or her decision is not final. The addition of a functioning water line required a significant closure of an access road, significant expenditures and the potential for blasting of ledge. Specific public notice should have been provided, and was not.
This Court has already found that Mr. D'Ellena consented to the May 5, 2004 decision of the board. By consenting to the administrative decision and taking no further action for several years, Mr. D'Ellena failed to timely appeal as mandated by R.I.G.L. § 45-23-67. His rights to challenge the insufficiency of the public notice have lapsed. Nor does he appear to have been harmed by the inadequate notice. Mr. D'Ellena and counsel knew that the waterline would be discussed, and prepared for this discussion. Almost four years passed after the discussion and decision before Mr. D'Ellena contested the notice.
Accordingly, while the notice was insufficient, Mr. D'Ellena waived his right to challenge that notice. See Sturbridge Home Builders, Inc.,v. Downing Seaport, Inc., 890 A.2d 58, 65 (R.I. 2005).
3. Mr. D'Ellena was not harmed by any violation of the Open MeetingsAct.
The Open Meetings Act was designed as an important preventive measure, to apprise the public of changes beforehand. As the General Assembly declared: *Page 10 
 It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy. R.I.G.L. 1956 § 42-46-1.
Our high court has underscored the significance of the statute and its intended effect:
 To effectuate that intent, the Legislature required, among other provisions, that public bodies provide notice of their meetings and include in that notice a "statement specifying the nature of the business to be discussed." The Legislature did not explicitly specify or delineate the exact requirements of this "statement." In our opinion, the Legislature intended to establish a flexible standard aimed at providing fair notice to the public under the circumstances, or such notice, based on the totality of the circumstances, as would fairly inform the public of the nature of the business to be discussed or acted upon. Tanner v. Town Council, 880 A.2d 784, 796 (R.I. 2005)
Mindful of the significance of the Open Meetings Act, Mr. D'Ellena was not aggrieved by any violation. He had ample notice of the time, the place, and the business to be discussed. He, and his attorney, recognized that the waterline would be a subject to be discussed. He waited over three years to challenge the discussion, well beyond the time guidelines suggested by the statute. See R.I.G.L. § 42-46-8. While these guidelines do not appear to foreclose direct actions at a later time, Mr. D'Ellena is not aggrieved by any violation of the Open Meetings Act.
4. A declaratory judgment is inappropriate.
This Court has already found that Mr. D'Ellena consented to the May 5, 2004 decision of the board. By consenting to the administrative decision and taking no further action for several years, Mr. D'Ellena failed to timely challenge the notice or appeal as mandated by R.I.G.L. § 45-23-67. In the same, he has failed to receive procedural due process or was aggrieved by any Open Meetings Act violation.
The Declaratory Judgment Act (R.I.G.L. chapter 9-30) affords the Court with discretion in awarding such relief. *Page 11 
 The Uniform Declaratory Judgments Act confers broad discretion upon the trial justice as to whether he or she should grant declaratory relief. See Employers' Fire Insurance Co. v. Beals, 103 R.I. 623, 628, 240 A.2d 397, 401
(1968) ("Even if the complaint contains a set of facts which bring it within the scope of our declaratory judgments act, there is no duty imposed thereby on the court to grant such relief, but rather the court is free to decide in the exercise of its discretion whether or not to award the relief asked for."). Cruz v. Wausau Insurance, 866 A.2d 1237, 1240 (R.I. 2005) (footnote deleted.)
Here, Mr. D'Ellena has failed to convince the Court that the use of that discretion would be appropriate. As indicated, he knew the waterline would be discussed and his attorney prepared and participated in that discussion. He waited several years to question the town's actions. In a recent case, our Supreme Court held:
 It is our opinion that plaintiffs should not be permitted, through the addition of a declaratory judgment count to a statutory zoning appeal, to bypass the statutory mechanism according to which decisions of the Superior Court on zoning appeals are reviewed by this Court only on discretionary basis. Northern Trust Co. v. Zoning Board of Review, 899 A.2d 517, 519 (R.I. 2006).
Use of a declaratory judgment to overcome such procedural shortcomings is simply inappropriate.
5. This Court is not passing upon the ability of other affectedparties to pursue relief. While holding that Mr. D'Ellena was not aggrieved by a violation of the Open Meetings Act, the Court is not holding that no Open Meetings Act violation occurred. This Court is cognizant not only of the significance of that statute, but of the concern of others in the area. Further, this Court specifically found that the town failed to meet its statutory notice requirements for a major change for this plat.
This particular neighborhood was concerned about the development in this subdivision. The testimony of James Rossi, Jr., an owner in the subdivision, illustrates how he was misled: He did not desire an active water line. The transcript of the crucial January 7, 2004 planning *Page 12 
board meeting includes an extended inquiry from an abutting owner, Ms. Monaghan. Ms. Monaghan and other neighbors who were not given specific notice may have been quite surprised to learn that their road would be closed and blasting may occur. Instead, all were left in the dark.
That said, the Open Meetings Act sets forth a specific procedure and encourages the participation of the Attorney General:
§ 42-46-8. Remedies available to aggrieved persons or entities.
 (a) Any citizen or entity of the state who is aggrieved as a result of violations of the provisions of this chapter may file a complaint with the attorney general. The attorney general shall investigate the complaint and if the attorney general determines that the allegations of the complaint are meritorious he or she may file a complaint on behalf of the complainant in the superior court against the public body.
 (b) No complaint may be filed by the attorney general after one hundred eighty (180) days from the date of public approval of the minutes of the meeting at which the alleged violation occurred, or, in the case of an unannounced or improperly closed meeting, after one hundred eighty (180) days from the public action of a public body revealing the alleged violation, whichever is greater.
 (c) Nothing within this section shall prohibit any individual from retaining private counsel for the purpose of filing a complaint in the superior court within the time specified by this section against the public body which has allegedly violated the provisions of this chapter; provided, however, that if the individual has first filed a complaint with the attorney general pursuant to this section, and the attorney general declines to take legal action, the individual may file suit in superior court within ninety (90) days of the attorney general's closing of the complaint or within one hundred eighty (180) days of the alleged violation, whichever occurs later.
 (d) The court shall award reasonable attorney fees and costs to a prevailing plaintiff, other than the attorney general, except where special circumstances would render such an award unjust. The court may issue injunctive relief and declare null and void any actions of a public body found to be in violation of this chapter. In addition, the court may impose a civil fine not exceeding five thousand dollars ($ 5,000) against a public body or any of its members found to have committed a willful or knowing violation of this chapter.
 (e) Nothing within this section shall prohibit the attorney general from initiating a complaint on behalf of the public interest.
 (f) Actions brought under this chapter may be advanced on the calendar upon motion of the petitioner.
 (g) The attorney general shall consider all complaints filed under this chapter to have also been filed under § 38-2-8(b) if applicable. *Page 13 
Obviously, the Court is displeased with the inadequate notice provided by the Planning Commission. That said, the case before the Court is limited to the parties and the controversy presented.
Mr. D'Ellena was afforded procedural due process and was not harmed by the inadequate notice. Not only did he waive his rights by failing to challenge these infirmities earlier, but he actually knew what would be discussed by the Planning Board. Hence, while a violation occurred, the Court is convinced that affording discretionary relief to this plaintiff would be improvident.
 Conclusion
Plaintiff's claims for declaratory relief are denied. Judgment is awarded to the Town of East Greenwich on all claims. The Town shall submit an appropriate judgment within seven days of the date of this Decision.
[1] A dry line is a readied water line not in active use. In this instance, the dry line was never connected to a water supply.